IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PAUL KOTKOWSKI | * | |
| | * | Civil Action No. CCB-20-1839 |
| v. | * | |
| | * | |
| NATIONWIDE PROPERTY & | * | |
| CASUALTY INSURANCE, *et al.* | * | |
| | * | |
| | * | |

*****

## MEMORANDUM

The plaintiff in this case, Paul Kotkowski, was injured in a motor vehicle collision in Maryland by an out-of-state driver insured by the defendant, Nationwide Property & Casualty Insurance Company ("Nationwide"). Mr. Kotkowski argues that a provision of the out-of-state driver's Nationwide policy commits Nationwide to increasing its coverage limit, and Nationwide disagrees.

Before the court are cross-motions for summary judgment, including a third motion from Mr. Kotkowski's insurance company, co-defendant Commerce Insurance ("Commerce"), in support of Mr. Kotkowski. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), the parties seek declaratory judgment on the question of whether Maryland law and Nationwide's insurance contract require Nationwide to adjust its policy limits upward from $15,0000 to $30,000 for its non-Maryland-resident insured. (ECF 32, Pl.'s Mot. Summ. J.; ECF 33, Def. Com. Ins.'s Mot. Summ. J.; ECF 34. Def. Nationwide Prop. and Cas. Ins. Co.'s Cross-Mot. Summ. J.).

The matter has been fully briefed, and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons discussed herein, the court will deny Mr. Kotkowski's and

1

Commerce's motions for summary judgment and grant Nationwide's motion for summary judgment.

## BACKGROUND

This case presents no factual disputes. On March 26, 2017, Paul Kotkowski, the plaintiff and a North Carolina citizen, was driving on Interstate 95 in Maryland and was involved in a collision with co-defendant Roosevelt Clark, who was driving a vehicle owned by co-defendant Kayla Brown. (ECF 32 at 4; ECF 34 at 2). Mr. Kotkowski was injured, and in October 2019 he filed a complaint in this court for the underlying tort claim. *Kotkowski v. Clark*, Civil Action No. 1:19-cv-3142-JMC.

Mr. Kotkowski was insured by co-defendant Commerce Insurance ("Commerce") with Uninsured/Underinsured Motorist coverage of $100,000. (ECF 32 at 5). At the time of the accident, Ms. Brown's vehicle was insured by co-defendant Progressive Insurance ("Progressive"), and Mr. Clark was insured by co-defendant Nationwide. (ECF 32 at 5). Both Ms. Brown's and Mr. Clark's policies are Delaware policies and carry bodily injury coverage of $15,000 per person and $30,000 per occurrence. (ECF 32-8, Exhibit 6 at 4). In contrast, the Maryland Transportation Code governs drivers' required security (e.g., insurance coverage) and sets the minimum limits at $30,000 per person and $60,000 per occurrence:

> The security required under this subtitle shall provide for at least . . . the payment of claims for bodily injury or death arising from an accident of up to $30,000 for any one person and up to $60,000 for any two or more persons, in addition to interest and costs[.]

Md. Code, Transportation § 17-103(b)(1).

In January 2020, Progressive adjusted its policy limits from $15,000 upward to $30,000 and tendered that amount to Mr. Kotkowski. (ECF 1, Compl. at ¶ 6). Commerce issued a letter stating that Nationwide must likewise adjust its policy limit upward from $15,000 to $30,000 per

person, according to a term in Nationwide's policy that (according to Commerce) promised to match any state's higher liability limit. (ECF 32-11, Exhibit 9, Letter from Arlene Richford, Claim Specialist, Commerce Ins. Co., to L. Off. Plaxen & Adler (May 22, 2020)). That contract provision, labeled "Financial Responsibility" and found under the "Coverage Extensions" section, states:

> We will adjust this policy to comply:
> 1. With the financial responsibility law of any state or province which requires higher liability limits than those provided by this policy.
> 2. With the kinds and limits of coverage required of non-residents by any compulsory motor vehicle insurance law, or similar law.

(ECF 32-8, Exhibit 6, Nationwide Policy 5207E923494 at L2).

Nationwide refused, arguing that Maryland does not have mandatory financial responsibility minimums for vehicles — like the one Mr. Clark drove during the collision — not registered in Maryland. (ECF 32-13, Exhibit 11, E-Mail from Atarah J. Savage, Senior Trial Attorney, Nationwide, to Bruce Plaxen, Partner, Plaxen & Adler, P.A. (June 1, 2020. 3:18 PM EDT)). Nationwide argued that Maryland's financial responsibility statute does not apply to vehicles registered out-of-state, and therefore Nationwide's policy language promising to match any state's required higher liability limits also does not apply. (*Id.*). Nationwide would later point to the Maryland Transportation Code's definition of "required security" for vehicles, arguing that it expressly places out-of-state vehicle registrants beyond the statute's reach:

> "Required security" means security in the form and providing for the minimum benefits required:
> 1. For a vehicle *registered in the State*, under this subtitle or any other provisions of the Maryland Vehicle Law; or
> 2. For a vehicle *registered in another jurisdiction*, under the laws of that jurisdiction.

Md. Code, Transportation § 17-101(d) (emphasis added).

3

Mr. Kotkowski then filed this declaratory judgment action asking the court to interpret Nationwide's automobile policy, and Judge Mark Coulson granted a stay in the underlying tort action to allow resolution.

## LEGAL STANDARDS

**Declaratory Judgment Act, 28 U.S.C. § 2201(a)**

The Federal Declaratory Judgment Act provides federal district courts the power "[i]n a case of actual controversy" to "declare the rights and other legal relations of any interested party seeking such a declaration, whether or not relief is or could be sought." 28 U.S.C. § 2201(a). A declaratory judgment action is appropriate when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality[.]" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted). One of the purposes of the act is to allow a party in an uncertain position to "gain relief from the insecurity caused by a potential suit waiting in the wings." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998).

**Summary Judgment and Rule 56**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties

4

will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Phillip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997). For each individual motion, the court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## ANALYSIS

### I. Choice of law

A federal court sitting in diversity must apply the substantive law of the state in which the cause of action arose. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Here, the law of the forum state, Maryland, governs.

In deciding questions of interpretation and validity of contract provisions, Maryland courts ordinarily adhere to the principle of *lex loci contractus* — that is, they apply the law of the jurisdiction where the contract was made. *Kramer v. Bally's Park Place*, 535 A.3d 466, 467 (Md. 1988). Because Mr. Clark took out his Nationwide insurance policy in Delaware, Delaware's substantive contract law applies to any policy interpretation questions required to resolve the case.

## II. Maryland's Financial Responsibility law

First, addressing Maryland law, the court finds, and the parties do not disagree, that no Maryland statute requires Nationwide to adjust its coverage upward from $15,000 to $30,000.

The Maryland Transportation Code's financial responsibility law governs the "required security" that owners of registered vehicles must maintain. *See* Md. Code, Transportation § 17-101–11.

> "Required security" means security in the form and providing for the minimum benefits required:
> (1) For a vehicle registered in the State, under this subtitle or any other provisions of the Maryland Vehicle Law; or
> (2) For a vehicle registered in another jurisdiction, under the laws of that jurisdiction.

*Id.* at § 17-101(d). This "required security" ordinarily takes the form of vehicle liability insurance coverage. The "minimum benefit" required for Maryland-registered vehicles in claims of bodily injury is $30,000 for one person and $60,000 per occurrence. *Id.* at § 17-103(b)(2). If the security is liability insurance, this means that $30,000/$60,000 is the lowest upper limit that a valid insurance policy can set for payouts. So long as the car is registered in Maryland, the owner must maintain security (e.g., liability insurance) at this level or higher. "The owner of a motor vehicle that is required to be registered in this State shall maintain the required security for the vehicle during the registration period." *Id.* at § 17-104(b).

Maryland imposes this requirement on the owners of vehicles registered in the state. The Maryland Court of Appeals has held that "the purpose of Maryland's compulsory insurance law is to ensure that those who own and operate motor vehicles registered in the State are 'financially able to pay compensation for damages resulting from motor vehicle accidents.'" *Blue Bird Cab Co. v. Amalgamated Casualty Ins. Co.*, 675 A.2d 122, 127 (Md. 1996) (citing *Enterprise Leasing Co. v. Allstate Ins. Co.*, 671 A.2d 509 (Md. 1996)). The Court of Appeals also has noted that if

6

"an automobile is not required to be registered in Maryland, and if the insurance policy covering an automobile was not issued, sold, or delivered in Maryland, the statutory provisions mandating particular insurance coverages, authorizing specified exclusions from those coverages, and generally not authorizing other exclusions are totally inapplicable." *Allstate Ins. Co. v. Hart*, 611 A.2d 100, 103 (Md. 1992).

In *Hart*, a married couple from Florida was involved in a car crash in Maryland, and their Florida-registered car was covered by an insurance policy that was executed, issued, and delivered in Florida by Allstate Insurance Company. *Id.* at 101. Mrs. Hart — the passenger in the car her husband was driving — sustained bodily injury and sued both the opposing driver and Mr. Hart for negligence. *Id.* Allstate denied coverage for Mr. Hart, citing the Florida insurance policy's household exclusion provision, which would exclude liability coverage for the insured's relative living in the same household. *Id.* Mrs. Hart then sought a declaration that the household exclusion (which was valid under Florida law) was invalid as violating Maryland public policy. *Id.* The Court of Appeals ultimately held that Maryland's public policy exception to *lex loci contractus* was not available; Florida law would apply, and the Court of Appeals enforced the contract provision in question. *Id.* In the course of its opinion, the *Hart* court held that Title 17 of the Maryland Code's Transportation Article does not reach out-of-state vehicles, even if that finding was just a stop along the way to the *Hart* court's ultimate holding on the strength or weakness of Maryland's public policy against household exclusions. Accordingly, the text of Title 17 of Maryland's Transportation Code and Maryland caselaw both confirm that the State's $30,000/$60,000 liability minimum does not apply to automobiles registered out of state and covered by insurance policies not issued, sold, or delivered in Maryland. Mr. Clark both registered his car and bought his $15,000/$30,000 Nationwide insurance policy in Delaware, and

7

Nationwide is therefore not required by Maryland transportation law to adjust its policy limit upward to match the State's requirements for in-state vehicles and policies.

### III.  Contract interpretation (Delaware law) — objective analysis

Without an express Maryland statutory requirement, the case turns on the meaning of the Nationwide contract's financial responsibility clause. Mr. Kotkowski argues that, as a matter of contract interpretation, the upward adjustment is required.[1]

Applying *lex loci contractus*, Delaware contract law principles will govern the outcome. Under Delaware law, contract interpretation — including that of insurance policies — is a question of law. *O'Brien v. Progressive Northern Ins. Co.*, 785 A.2d 281, 286 (Del. 2001). A court interprets an insurance contract relying on all of the pertinent provisions of the policy as a whole, and not on any single passage in isolation. *Id.* at 287 (citing *Aetna Cas. And Sur. Co. v. Kenner*, 570 A.2d 1172, 1174 (Del. 1990), overruled on other grounds by *Hurst v. Nationwide Mut. Ins. Co.*, 652 A.2d 10 (Del. 1995)).

> [W]here the language of a policy is clear and unequivocal, the parties are to be bound by its plain meaning. Clear and unambiguous language in an insurance contract should be given its ordinary and usual meaning. The Delaware courts should not destroy or twist policy language under the guise of construing it.

*Id.* at 288 (internal quotation marks omitted). While Delaware requires that any ambiguity be construed against the drafter of the contract, *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992), "an insurance contract is not ambiguous simply because the parties do not agree on the proper construction. Instead, a contract is only ambiguous when the provisions in controversy are reasonably or fairly susceptible to different

---

[1] Commerce and Mr. Kotkowski rely in part on the fact that Progressive adjusted its limits upward, arguing that Nationwide's language is similar and should therefore also be adjusted upward. (ECF 33-1 at 2; ECF 32-11, Exhibit 9). But Nationwide's counsel suggests that Progressive's upward adjustment was simply a business decision. (Exhibit 32-13, Exhibit 11). In any event, neither party proffered the Progressive policy's actual language, so the court cannot determine whether it is the same as the Nationwide policy's.

interpretations or may have two or more different meanings" *O'Brien*, 785 A.2d at 288 (citing *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997)). The court makes this determination without reference to extrinsic evidence. *Id.*

Here, the meaning of the financial responsibility clause is unambiguous and supports Nationwide's reading — i.e., that because Maryland's required security statute does not apply to an out-of-state policy like Mr. Clark's (*see* § II, *supra*), there is no requirement imposed on Nationwide and therefore nothing it must comply with by providing an upward adjustment.

The contract provision states:

> We will adjust this policy to comply:
> 1. With the financial responsibility law of any state or province which requires higher liability limits than those provided by this policy.
> 2. With the kinds and limits of coverage required of non-residents by any compulsory motor vehicle insurance law, or similar law.

(ECF 32-8, Exhibit 6, Nationwide Policy 5207E923494 at L2).

As Mr. Kotkowski notes, the clause is located in the Coverage Extension section. This is because it applies only to provide a higher limit of coverage, when that is required — in other words, an extension. Mr. Kotkowski has not shown, however, that it represents additional voluntary coverage, or coverage for which Mr. Clark paid an additional premium. Further, the clause includes as its second item a promise to comply with coverage required of non-residents by any "compulsory" motor vehicle insurance law, again implying a promise to adjust coverage limits only when the applicable state law compels that adjustment.

Mr. Kotkowski argues that the policy volunteers an upward adjustment if state law requires higher coverage of *anyone* (not just the driver and policy in question), and that the policy "neglects to carve out an exception that would be applicable in this instance" — presumably an exception for insurance policies not covered by the state financial responsibility

9

law mentioned by the contract provision. (ECF 32-1 at 11). In other words, the provision should have said something along the lines of, "We will adjust this policy to comply with the financial responsibility law of any state which requires higher liability limits than those provided by this policy, *unless that law does not apply to this policy*." This reading of the provision and this understanding of what it "requires" together necessitate "twisting" the language of the policy, just as Delaware courts instruct against. Further, this interpretation fails to consider the policy language as a whole. The plain meaning of item (1) is that Nationwide would adjust the limit to comply with a state financial responsibility law that required higher liability limits of *Nationwide* and its policy.

If the policy had included additional language about voluntary upward adjustment, if it had omitted language about the state law's requirements, if there were evidence that the insured had paid extra for coverage beyond what state law required, or if the Maryland General Assembly had enacted a deemer statute extending Maryland's $30,000/$60,000 financial responsibility levels to non-residents, the outcome may have been otherwise. Absent any such alternate circumstances, the Financial Responsibility contract provision is not ambiguous, and its plain meaning is that Nationwide would comply with state laws that imposed requirements upon it and its policies.

## CONCLUSION

For the reasons stated herein, the court will grant Nationwide's motion for summary judgment and deny Mr. Kotkowski's and Commerce's motions for summary judgment. A separate Order follows.

| | |
|---|---|
| 9/29/2021 | /s/ |
| Date | Catherine C. Blake |
| | United States District Judge |